STEPHEN R. SMEREK (SBN: 208343)
ssmerek@winston.com
JASON C. HAMILTON (SBN: 267968)
jhamilton@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
38th Floor
Los Angeles, CA 90071
Phone: (213) 615-1700
Fax:  (213) 615-1750

*Attorneys for Defendant EOS Partners*



Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California Corporation,<br><br>                Plaintiff,<br><br>    vs.<br><br>EOS PARTNERS, a Delaware Limited Partnership;<br>REDWOOD CAPITAL GROUP, a Delaware Limited Liability Company; and<br>DOES 1 through 50, inclusive,<br><br>          Defendants. | **CV14-6532** 𝒮𝒿𝑜 𝐴𝑆+<br><br>Case No:<br><br>(Los Angeles County Superior Court Case No. BC546905)<br><br>**DEFENDANT EOS PARTNERS, L.P.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)**<br><br>Complaint Filed:  May 23, 2014<br>Complaint Served:  July 21, 2014 |

NOTICE OF REMOVAL

Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441(a) and 12 U.S.C. § 632, Defendant EOS Partners, L.P. ("EOS Partners"), without waiving any defenses it may have, hereby removes the above-captioned action (this "Action") from the Superior Court of the State of California for the County of Los Angeles to this United States District Court for the Central District of California, Western Division. As grounds for removal, EOS Partners states as follows:

## INTRODUCTION

1. This Action was commenced on May 23, 2014 by the filing of a Complaint in *MGA Entertainment, Inc. v. EOS Partners, et al.*, Case No. BC546905, in the Superior Court for the County of Los Angeles. As required by 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served on EOS Partners, including the Complaint and summons, are attached as Exhibit A ("Ex. A"). EOS Partners has not yet filed an answer or other responsive pleading to the Complaint.

2. EOS Partners was served on July 21, 2014. This Notice of Removal is therefore timely under 28 U.S.C. § 1446(b).

3. The United States District Court for the Central District of California, Western Division is the appropriate court for filing this Notice of Removal, because it is the court for the district and division embracing the place where the Action is pending, in the Superior Court for the County of Los Angeles. *See* 28 U.S.C. §§ 1441(a), 1446(a)

4. Redwood Capital Group LLC consents to removal of this action. *See* Decl. of Matthew Johnson ("Johnson Decl.") ¶ 3.

//

//

//

Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

**THE ACTION IS REMOVABLE
BECAUSE THE COURT HAS ORIGINAL JURISDICTION
ON TWO INDEPENDENT GROUNDS**

5.    Under Section 1441(a) of Title 28, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

6.    Here, the Court has original jurisdiction on two independent grounds.

**A. THE COURT HAS ORIGINAL JURISDICTION
UNDER THE EDGE ACT**

7.    First, the Court has original jurisdiction under Section 632 of Title 12 ("Section 632" or the "Edge Act").

8.    Section 632 grants the Court original jurisdiction over civil suits "to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, . . . or out of other international or foreign financial operations." 12 U.S.C. § 632; *see also Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) ("12 U.S.C. § 632 . . . invests in the federal courts original jurisdiction over cases arising out of foreign banking transactions to which a U.S. corporation is a party."). The statute specifically contemplates removal. 12 U.S.C. § 632 ("[A]ny defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.").

9.    Assuming one party is a U.S. corporation, "[a] suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking." *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996). As such, the "presence of state law issues does

Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

1  not divest federal courts of Edge Act jurisdiction so long as the foreign banking

2  transactions are involved." *Pinto v. Bank One Corp.*, 02 CIV.8477, 2003 WL

3  21297300, *4 (S.D.N.Y. June 4, 2003) (upholding removal under Section 632, where

4  plaintiff asserted state law claims against U.S. credit card companies based on

5  transactions processed by foreign banks). Nor does the fact that the parties to the

6  lawsuit are not themselves foreign banks. Indeed, "several courts have found

7  jurisdiction under § 632 proper in an action against a domestic entity arising from a

8  transaction involving international or foreign banking, and in which the foreign entity

9  was not named as a party." *City of Stockton v. Bank of Am.*, N.A., C-08-4060, 2008

10  WL 5063877, *2 & n.3 (N.D. Cal. Nov. 21, 2008) (denying motion to remand

11  removed case where plaintiff had dismissed foreign banks but continued to allege

12  harm caused by a conspiracy involving those banks).

13       10.   The Court here accordingly has original jurisdiction under Section 632.

14  MGA Entertainment, Inc. ("MGA") is a U.S. corporation. Ex. A, Complaint at ¶ 2.

15  Further, this Action arises out of foreign banking transactions and financial

16  operations, for at least two reasons. First, MGA's entire suit against Defendants is

17  based on an alleged fraud in MGA's acquisition of Smoby, S.A. and the Defendants'

18  alleged statements concerning the foreign banks' intent to discount Smoby's debt after

19  MGA's acquisition. Ex. A, Complaint at ¶¶ 9-13, 26-34. As the Ninth Circuit has

20  noted in upholding removal under Section 632, "'international or foreign financial

21  operations' . . . include operations by banks or corporations to raise capital, including

22  through the sale of securities." *Bin-Jiang Tao v. Citibank, N.A.*, 445 F. App'x 951,

23  953-54 (9th Cir. 2011) (affirming denial of motion to remand, where underlying

24  transaction involved purchase and sale of corporation's stock).

25       11.   Second, this Action arises from foreign banking transactions and

26  financial operations because MGA's claims are premised on an alleged illegal scheme

27  between foreign banks and the Defendants concerning whether the banks would

28  discount Smoby's debt. *See, e.g.*, Ex. A, Complaint at ¶¶ 26-34. "[A]n alleged illegal

1  agreement between foreign banks and others and . . . necessarily 'involves'

2  international or foreign banking." *City of Stockton v. Bank of Am.*, N.A., C-08-4060,

3  2008 WL 4911183, *5 (N.D. Cal. Nov. 13, 2008) (denying motion to remand removed

4  case where "the involvement of the foreign banks identified in the complaint is

5  necessary to effectuate the unlawful agreement"). Here, MGA alleges not just that the

6  foreign banks worked with Defendants to develop the supposed scheme, but also that

7  the foreign banks "used EOS and Redwood Capital as agents to negotiate with

8  MGA."[1] Ex. A, Complaint at ¶ 17.

9

10  **B. THE COURT HAS ORIGINAL JURISDICTION**
    **UNDER 28 U.S.C. § 1332**

11

12      12.    In addition, the Court has original jurisdiction under Section 1332 of

13  Title 28, which provides that "[t]he district courts shall have original jurisdiction of all

14  civil actions where the matter in controversy exceeds the sum or value of $75,000,

15  exclusive of interest and costs, and is between citizens of a State and citizens or

16  subjects of a foreign state." 28 U.S.C. § 1332(a)(2). The Supreme Court has read

17  Section 1332 to require complete diversity between all plaintiffs and all defendants.

18  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

19      13.    First, the matter in controversy exceeds the sum or value of $75,000,

20  exclusive of interest and costs. MGA alleges total damages of at least $430 million.

21  Ex. A, Complaint at ¶ 22.

22      14.    Second, complete diversity exists because neither of the entities that are

23  the intended defendants to this action—that is, the entities that are described in the

24  Complaint and that hold the interests that are the subject of this lawsuit—is a citizen

25  of a state where Plaintiff MGA is a citizen.

26  ─────────────────

[1] Notably, MGA filed a separate lawsuit against these foreign banks, *MGA*
27  *Entertainment v. Deutsche Bank AG, et al.*, 2:11-cv-04932, which was subsequently
    removed to—and is currently pending in—this same United States District Court for
28  the Central District of California, Western Division. *See* Complaint at ¶ 19; Ex. C,
    Second Amended Complaint in *MGA Entertainment v. Deutsche Bank AG, et al.*,
    2:11-cv-04932.

Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

15.     As MGA has alleged in its complaint, MGA is a California citizen, because it is incorporated in California and has its principal place of business there. Ex. A, Complaint at ¶ 3; 28 U.S. C. § 1332(c)(1).

16.     Despite MGA's claims to the contrary, neither of the intended defendants to this action is a California citizen. As explained below, MGA has named the wrong parties.

17.     MGA has incorrectly named EOS Partners, an entity that has no connection to this Action.   See Decl. of Steven M. Friedman ("Friedman Decl.") ¶¶ 2-3. MGA's allegations against EOS Partners are based entirely on its alleged interactions with Dedric Cederholm. (See Complaint, ¶ 19.)  The entity for which Didric Cederholm worked is ECO Management LP ("ECO Management").  See Friedman Decl. ¶ 4. ECO Management, a Delaware limited partnership, is a citizen of New York and Connecticut, because its partners are citizens of those States.  See Friedman Decl. ¶ 5; Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (stating that "a partnership is a citizen of all of the states of which its partners are citizens").   ECO Management is not a citizen of California.

18.     MGA has also incorrectly named Redwood Capital Group LLC, a party that MGA identifies as a California citizen. See Ex. A, Complaint at ¶ 4.  Redwood Capital Group LLC has no connection to this Action.  See Johnson Decl. ¶ 2. Redwood Capital never employed Ruben Kliksberg, whom Plaintiff alleges was affiliated with Redwood Capital.  Id.

19.     In sum then, ECO Management is not a citizen of California, the state in which the Action was brought.  Accordingly, Section 1441(b)—which provides that an action otherwise removable based on diversity "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"—does not apply here.  See 28 U.S.C. § 1441(b).

20.     Because MGA's Complaint fails to state a cause of action against a California resident, and since the failure is obvious, the citizenship of the incorrectly

Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

Winston & Strawn LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

1  named, and therefore fraudulently joined Defendants—EOS Partners and Redwood

2  Capital Group— will not defeat diversity.  *Ritchey v. Upjohn Drug Co.*, 139 F.3d

3  1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants

4  will not defeat removal on diversity grounds."); *McCabe v. General Foods Corp.*, 811

5  F.2d 1336, 1339 (9th Cir. 1987) (finding, on the basis of sworn declarations, that

6  defendants were fraudulently joined and that their presence did not destroy diversity);

7  *see also Golesh v. Morgan Stanley DW Inc.*, C 06-5644, 2006 WL 3462662, *1-2 &

8  n.1 (N.D. Cal. Nov. 29, 2006) (upholding removal based on diversity jurisdiction,

9  where plaintiffs incorrectly described defendant as a California citizen).

10      21.    EOS Partners and ECO Management reserve all of their rights to defend

11  MGA's claims on the merits and nothing contained in this Notice of Removal shall be

12  deemed a waiver of those rights or an admission that Defendants agree with the

13  allegations of the Complaint or that a cause of action lies against them.

### CONCLUSION

16      Based on the foregoing EOS Partners requests that these proceedings, titled

17  *MGA Entertainment, Inc. v. EOS Partners, et al.*, Case No. BC546905, in the Superior

18  Court for the County of Los Angeles, be removed to this Court.

20  Dated:  August 19, 2014

22                              WINSTON & STRAWN LLP

23                      By:   _____
                              Stephen R. Smerek
24                            Jason C. Hamilton

25                              *Attorneys for Defendant EOS Partners*

**Fox et al. v. JP Morgan Chase**
**C.D. Cal. Removal Papers – CHECKLIST**

<u>For the filing in Federal Court:</u>

- Civil Cover Sheet—LA#299281
  - o *Make sure to sign bottom of civil cover sheet*
- Notice of Removal—LA#299069
  - o Exhibit A—
  - o Exhibit B—Complaint
  - o Exhibit C—Declaration of Maria Rodriguez—LA#
    - ▪ Exhibit 1 (arbitration agreement)
  - o Exhibit D—Declaration—LA#
  - o Exhibit E—Declaration—LA#
- Certification and Notice of Interested Parties or Entities—LA#299070
- Corporate Disclosure Statement—LA#299071
- *After federal court filing is complete, check documents that clerk provides us at filing and:*
  - o *See if there are any instructions re: emailing an electronic copy to clerk for ECF*
  - o *See if we need to serve any additional court-provided documents on opposing counsel*

<u>For the filing in State Court:</u>

- Notice to the Clerk of the Superior Court of Removal of Civil Action to Federal Court—LA#299072
  - o Attach as "Exhibit A" *conformed* Notice of Removal with its exhibits
- Notice to Adverse Parties of Removal of Civil Action to Federal Court—LA#294747
  - o Attach as "Exhibit A" *conformed* Notice of Removal with its exhibits
- Service by mail, State court proof of service

<u>For the filing in Federal Court</u> (prepare and file the following after state court filing is complete):

- Certificate of Service of Removal Documents Filed with Superior Court and Related Documents
  - o *Fill in case number on caption and in footers*
  - o Exhibit 1—*Conformed* Notice to the Clerk of the Superior Court of Removal of Civil Action to Federal Court, including exhibits
  - o Exhibit 2—*Conformed* Notice to Adverse Party of Removal of Civil Action to Federal Court, including exhibits
  - o Exhibit 3—State Court POS
  - o *Please list titles of all documents received from District Court that we need to serve on opposing counsel in the certificate of Service*
  - o Serve by mail

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** /EOS PARTNERS,/ a Delaware Limited
*(AVISO AL DEMANDADO):* Partnership; REDWOOD CAPITAL
GROUP, a Delaware Limited Liability Company; and DOES
1 through 50, inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**CONFORMED COPY
ORIGINAL FILED**
Superior Court Of California
County Of Los Angeles

**MAY 2 3 2014**

Sherri R. Carter, Executive Officer/Clerk
By: Kristina Vargas, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:** MGA ENTERTAINMENT, INC.
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* a California
corporation

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles Superior Court
600 S. Commonwealth Avenue
Los Angeles, CA 90005

CASE NUMBER
*(Número del Caso):* BC 5 4 6 9 0 5

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
A. Barry Cappello (SBN 037835)                    (805) 564-2444  (805) 965-5950
Leila J. Noël (SBN 114307)
Cappello & Noël LLP
831 State Street, Santa Barbara, CA 93101

DATE:                    SHERRI R. CARTER    Clerk, by _____ Kristina Vargas _____, Deputy
*(Fecha)*                                    *(Secretario)*                                      *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* EOS Partners, a Delaware Limited Partnership

under: [ ] CCP 416.10 (corporation)         [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
       [X] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
       [ ] other *(specify):*
4. [X] by personal delivery on *(date):*

(SEAL)

MAY 2 3 2014

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Page 1 of 1

Legal
Solutions
Plus

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| A. Barry Cappello (SBN 037835)<br>Leila J. Noël (SBN 114307)<br>Cappello & Noël LLP<br>831 State Street<br>Santa Barbara, CA 93101<br>TELEPHONE NO.: (805) 564-2444   FAX NO.: (805) 965-5950<br>ATTORNEY FOR *(Name)*: Plaintiff MGA Entertainment, Inc. | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court Of California<br>County Of Los Angeles<br><br>MAY 23 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Kristina Vargas, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 600 S. Commonwealth Avenue
MAILING ADDRESS: 600 S. Commonwealth Avenue
CITY AND ZIP CODE: Los Angeles, CA 90005
BRANCH NAME: Central Civil West

CASE NAME: MGA Entertainment, Inc. v. EOS Partners, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BC546905 |
| | | | JUDGE: | |
| | | | DEPT.: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [X] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [X] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive

4. Number of causes of action *(specify)*: 4

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 23, 2014

A. Barry Cappello
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

00/00/2014 10:23:30 FAX 2132499990     NATIONWIDE LEGAL                               1

| SHORT TITLE: MGA v. EOS | CASE NUMBER BC546905 |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES  CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL _7 wks_ ☐ HOURS/☐ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office



**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)                 **CIVIL CASE COVER SHEET ADDENDUM**              Local Rule 2.0
LASC Approved 03-04                    **AND STATEMENT OF LOCATION**                   Page 1 of 4



| SHORT TITLE: MGA v. EOS | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not Insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: MGA v. EOS | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6008  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: MGA v. EOS | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☑2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>Redwood Capital<br>1100 Glendon Avenue, Ste. 905<br>Los Angeles, CA 90024 |
|---|---|
| **CITY:** Los Angeles | **STATE:** CA | **ZIP CODE:** 90024 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Central Civil West</u> courthouse in the <u>Central</u> District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: <u>May 23, 2014</u>

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev, 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number _____

**BC546905**

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below. There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Michael Johnson | 56 | 514 | |
| Hon. Terry A. Green | 14 | 300 | Hon Rolf M. Treu | 58 | 516 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Rita Miller | 16 | 306 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. William F. Fahey | 69 | 621 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rafael Ongkeko | 73 | . 733 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. Teresa Sanchez-Gordon | 74 | 735 | . |
| Hon. Mary H. Strobel | 32 | 406 | | | | |
| Hon. Michael P. Linfield | 34 | 408 | | | | |
| Hon. Gregory Alarcon | 36 | 410 | **Hon. Emilie H. Elias** | **324** | **CCW** | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | . | | | |
| Hon. Michelle R. Rosenblatt | 40 · | 414 | . | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | | |
| Hon. Mel Red Recana | 45 | 529 | | | | |
| Hon. Frederick C. Shaller | 46 | 500 | . | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | | |
| Hon. Deirdre Hill | 49 | 509 | | | | |
| Hon. John L. Segal | 50 | 508 | | | | |
| Hon. Mitchell L. Beckloff | 51 | 511 | *Provisionally Complex Non-Class Action Cases | | | |
| Hon. Susan Bryant-Deason | 52 | 510 | Assignment is Pending Complex Determination | 324 | CCW | |
| Hon. Steven J. Kleifield | 53 | 513 | | | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | | |

*Complex

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on MAY 2 3 2014  SHERRI R. CARTER, Executive Officer/Clerk

By _____Kristina Vargas_____, Deputy Clerk

LACIV CCH 190 (Rev05/14)
LASC Approved 05-06
For Optional Use

NOTICE OF CASE ASSIGNMENT –

UNLIMITED CIVIL CASE

Page 1 of 2

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

.The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

LACIV CCH 190 (Rev05/14)
LASC Approved 05-06
For Optional Use

NOTICE OF CASE ASSIGNMENT –

UNLIMITED CIVIL CASE

Page 2 of 2

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

> _____
> (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR PLAINTIFF)

Date:

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR DEFENDANT)

Date:

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR DEFENDANT)

Date:

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR DEFENDANT)

Date:

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR _____)

Date:

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR _____)

_____              ▶ _____
(TYPE OR PRINT NAME)                           (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:  FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

<table>
<tr><td>NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:</td><td>STATE BAR NUMBER</td><td>Reserved for Clerk's File Stamp</td></tr>
<tr><td>TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):</td><td>FAX NO. (Optional):</td><td></td></tr>
</table>

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
| --- | --- |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:
_____
(TYPE OR PRINT NAME)

Date:
_____
(TYPE OR PRINT NAME)

Date:
_____
(TYPE OR PRINT NAME)

Date:
_____
(TYPE OR PRINT NAME)

Date:
_____
(TYPE OR PRINT NAME)

Date:
_____
(TYPE OR PRINT NAME)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

00/00/2014  10:23:30 FAX 2132499990        NATIONWIDE LEGAL                                    1

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAY 23 2014

Sherri R. Carter, Executive Officer/Clerk
By: Kristina Vargas, Deputy

1  A. Barry Cappello (SBN 037835)
   abc@cappellonoel.com
2  Leila J. Noël (SBN 114307)
   lnoel@cappellonoel.com
3  Wendy D. Welkom (SBN 156345)
   wwelkom@cappellonoel.com
4  CAPPELLO & NOËL LLP
   831 State Street
5  Santa Barbara, California 93101
   Telephone:    (805) 564-2444
6  Facsimile:    (805) 965-5950

7  Attorneys for Plaintiff

BY FAX

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              FOR THE COUNTY OF LOS ANGELES

11  MGA ENTERTAINMENT, INC., a California       Case No.:    BC546905
    Corporation,
12                                              COMPLAINT FOR:
                 Plaintiff,
13                                              1.   FRAUD – NON-DISCLOSURE
    vs.
14                                              2.   FRAUD – CONCEALMENT
    EOS PARTNERS, a Delaware Limited
15  Partnership;                                3.   FRAUD – AIDING AND ABETTING
    REDWOOD CAPITAL GROUP, a Delaware
16  Limited Liability Company; and             4.   NEGLIGENT
    DOES 1 through 50, inclusive,                   MISREPRESENTATION
17
                 Defendants.
18                                              JURY TRIAL DEMANDED

19

20

21

22

23

24

25

26

27

28

10012.003 - 234773.1                    COMPLAINT

Plaintiff alleges:

1.      All allegations made in this complaint are based upon information and belief, except those allegations which pertain to the named plaintiff, which are based on personal knowledge.  The allegations of this complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**PARTIES**

2.      Plaintiff MGA ENTERTAINMENT, INC. ("MGA") is a California corporation with its headquarters in the County of Los Angeles, California.

3.      On information and belief, Defendant EOS Partners is a Delaware Limited Partnership ("EOS") that has conducted commercial activities in California on a substantial, continuous, and systematic basis.

4.      On information and belief, Redwood Capital Group is a Delaware Limited Liability Company ("Redwood Capital") that has conducted commercial activities in California on a substantial, continuous, and systematic basis and operates permanent offices in Los Angeles, California, where at least one of its members or partners maintains his primary office and where that member or partner is a citizen and resident.

5.      Defendants have subjected themselves to California law in a California forum by materially assisting the sale of securities in the State of California, all of which has caused in-state injury to California residents.

6.      The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein under the fictitious names of DOES 1 through 50, inclusive, are unknown to plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will ask leave of Court to amend this complaint and insert the true names and capacities of said Defendants when the same have been ascertained.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein alleged, and plaintiff's damages as alleged herein were proximately caused by such Defendants.

7.      At all times material herein, each of the Defendants named herein under the fictitious

1

10012.003 - 234273.1

1  names of DOES 1 through 50, inclusive, was the agent, servant and employee of each of the

2  remaining Defendants, and acting within the purpose, scope and course of said agency, service and

3  employment, with the express and/or implied knowledge, permission and consent of the remaining

4  Defendants, and each of them, and each of said Defendants ratified and approved the acts of the

5  other Defendants.

6        8.     At all times material herein, each Defendant was the agent, servant and employee of

7  certain remaining Defendants and the Banks, and acting within the purpose, scope and course of said

8  agency, service and.employment, with the express and/or implied knowledge, permission and

9  consent of those remaining Defendants, and each of them, and each of said Defendants ratified and

10  approved the acts of the other Defendants.

11

12                                 **THE BANKS**

13        9.     Deutsche Bank AG ("DB") is a German company.  On information and belief, DB

14  maintains offices in New York, NY; Los Angeles, CA; Wilmington, DE; Jersey City, NJ; and Salem,

15  NH.  DB is listed on the New York Stock Exchange with a stock symbol of DBRT.

16        10.    Barclays Bank PLC ("Barclays") is a British Corporation.  On information and belief,

17  Barclays maintains offices in Long Island City, NY; Wilmington, DE; Santa Monica, CA; Miami,

18  FL; New York, NY; Philadelphia, PA; and Washington, DC.  Barclays is listed on the New York

19  Stock Exchange with a stock symbol of BCSPRD.

20        11.    Credit Agricole Corporate and Investment Bank, formerly known as Calyon

21  ("Calyon"), is a French public limited company.  On information and belief, Caylon maintains

22  offices in Chicago, IL; New York, NY; Dallas, TX; Houston, TX; Los Angeles, CA; and Miami, FL.

23        12.    Commerzbank Aktiengesellschaft ("Commerzbank") is a German company with

24  offices in New York, NY.

25        13.    Societe Generale ("SG") is a French public limited company. On information and

26  belief, Societe Generale maintains offices in Chicago, IL; Dallas, TX; Houston, TX; New York, NY;

27  and Los Angeles, CA.

28        14.    DB, Barclays, Calyon, Commerzbank, and SG sometimes are referred to herein

1  collectively as the "Banks."

2  15.  Calyon and SG sometimes are referred to herein collectively as the "Original

3  Lenders."

4  16.  DB, Barclays, and Commerzbank sometimes are referred to herein collectively as the

5  "Assignees."

6  17.  On information and belief, DB partnered with Defendants EOS and Redwood Capital

7  regarding MGA's acquisition of French company Smoby S.A. ("Smoby") described herein. The

8  Banks also used EOS and Redwood Capital as agents to negotiate with MGA, and EOS and

9  Redwood Capital were authorized to negotiate a debt reduction. MGA met and negotiated with EOS

10  and Redwood Capital in the United States, and engaged in extensive negotiations with both EOS and

11  Redwood Capital from its California offices.

12

13  **VENUE**

14  18.  Venue is appropriate pursuant to Code of Civil Procedure sections 395(a) and 395.5

15  as at least one of the Defendants resides in Los Angeles County, the obligations and liabilities that

16  are the subject of this litigation arose in Los Angeles County, and the underlying negotiations and

17  transactions were handled and closed in Los Angeles County.

18

19  **DELAYED DISCOVERY**

20  19.  Plaintiff MGA has sued the Banks in a separate case pending in the United States

21  District Court, Central District of California (*MGA Entertainment, Inc. v. Deutsche Bank AG*, Case

22  No. CV 11-04932 GW (RZx)). As part of its investigation in connection with that case, in or around

23  February 2014 Plaintiff MGA had a discussion with Didric Cederholm of Defendant EOS and

24  communicated with Ruben Kliksberg of Redwood Capital. At that time, MGA discovered the

25  elements of the causes of action set forth herein against Defendants EOS and Redwood Capital.

26  20.  During MGA's discussion with Mr. Cederholm, Mr. Cederholm's information

27  depicted that the entirety of the Banks' and Defendants' purported negotiations with MGA regarding

28  settling the Smoby debt had been a fraud. From this MGA learned the scheme from the outset was

3

COMPLAINT

10012.003 · 234273.1

to lure MGA into purchasing the Smoby company, force MGA to assume nearly 300M EUR in debt, and sue MGA in France, where a quirky French law might afford the Banks a windfall. The Defendants may not have known of the Banks' plan to defraud MGA during their initial dealings with MGA, but, on information and belief the Defendants learned of the Banks' fraud prior to or just after MGA acquired the Smoby shares, before MGA was snared in the quagmire of French law, and before MGA expended millions of dollars to salvage Smoby.

21.     In fact, Mr. Cederholm relayed to MGA that the director of SG told him refusing to do a discounted debt deal with MGA was not about the money, but that they were out to "get" Isaac Larian, MGA's principal, by seeking to hold MGA liable for the entire debt of nearly 300M EUR. In other words, the Banks intended to lure MGA into buying Smoby, so they could spring a lawsuit on MGA in France, because the Banks knew they could argue in France that MGA was liable for the entire debt even though MGA had never made any offer or entered into any contract to do so.

22.     Mr. Cederholm also relayed that the director of SG not only disliked Mr. Larian, he wanted to trick him into believing the Banks would discount the Smoby debt for the sole purpose of enabling them to spring suit on MGA in France, irrespective of the lack of any contractual basis for their claims. SG relayed that it did not matter what was in everyone's best interest or reasonable— they wanted to bleed MGA dry.

23.     Despite learning the Banks' intent, the Defendants never disclosed this information to MGA and knowingly permitted MGA to purchase Smoby on the false pretense that the Banks would negotiate in good faith with MGA to settle Smoby's debts.

24.     Plaintiff MGA could not have made an earlier discovery of these facts despite reasonable diligence because the federal case has been stayed, and no discovery has been permitted since it was first filed in March, 2011. Therefore, MGA could not have reasonably discovered facts supporting the causes of action set forth herein. .

25.     Prior to February 2014, MGA did not believe or have reason to believe EOS or Redwood were aware of or involved in the frauds perpetrated by Breuil and the Banks. It was not until approximately February 2014 that MGA learned facts supporting that EOS and Redwood Capital had knowledge of these frauds. Even though it knew EOS and Redwood Capital were

4

1   partners with DB on the Smoby debt and negotiated as DB's agents, MGA did not know until 2014

2   that Defendants EOS and Redwood knew the Banks secret intention during the Defendants' and

3   Banks' dealings with MGA. Prior to February 2014, MGA was aware of no facts which reasonably

4   might have led it to investigate whether the Defendants' activities were responsible for its damages.

5

6                                    **GENERAL ALLEGATIONS**

7          26.     This complaint seeks to hold the Defendants liable for their role in fraudulently

8   inducing MGA, a California company, to acquire Smoby, a French company, based on

9   misrepresentations, omissions, and false information. The Banks and Defendants held nearly 300M

10  EUR of Smoby debt, which they knew Smoby would never be able to repay. Instead of putting

11  Smoby into bankruptcy, the Defendants and the Banks developed a scheme to induce a solvent

12  investor to buy Smoby without knowledge of its true financial state. This was the only way the

13  Banks and Defendants could hope to recover the full amount of this debt.

14         27.     The Banks partnered with Smoby and its principal J.C. Breuil; together they provided

15  false financial reports to MGA and concealed the true financial condition of Smoby.

16         28.     The Banks also misrepresented to MGA, both directly and through their agents

17  including the Defendants, that they would discount the nearly 300M EUR of debt in connection with

18  MGA's acquisition of Smoby. This discount on the debt was essential to MGA being able to turn

19  Smoby around, and MGA counted on this discount in deciding to acquire Smoby.

20         29.     In reliance on the Banks' and Defendants' representations, MGA acquired Smoby and

21  invested tens of millions of dollars to attempt to salvage it. Although Smoby was represented as a

22  company with mere cash flow problems, in fact it was in dire financial condition and carried a

23  massive debt it could not service.

24         30.     Following negotiations carried out in the United States, and an offer and acceptance

25  for the purchase of the shares emanating from California, MGA exercised its call option on the

26  Smoby securities.

27         31.     After MGA acquired Smoby, the Banks and Defendants continued to indicate to

28  MGA that they wanted to settle the Smoby debt at a discount with MGA. They continued this

10012.003 - 234773.1

1   misrepresentation until Smoby was put into bankruptcy.

2       32.   However, the Defendants and the Banks never intended to or did honor their

3   representations, and without a discount on the debt, it was impossible for MGA to salvage Smoby or

4   its multi-million dollar investment.

5       33.   After Smoby was liquidated in a French bankruptcy proceeding, and MGA lost

6   everything, the Banks filed suit in France against MGA seeking to hold it liable for the entirety of

7   Smoby's debts.

8       34.   As a consequence of the Defendants' wrongful acts, MGA invested over 50M EUR in a

9   failed company, on which it suffered a total loss.  MGA also suffered millions of dollars in additional

10   losses resulting from the transaction, as detailed herein.

11

12             **The Banks' Initial Involvement With Smoby**

13       35.   Smoby was France's leading toy manufacturer and number three in Europe.  Posting

14   sales in the hundreds of millions of euros, Smoby primarily targeted the infant through age ten market

15   with its stable of toy companies.

16       36.   In or around 2002, Jean-Christophe Breuil was appointed CEO of Smoby Group.

17   Mr. Breuil created a sophisticated network of offshore front companies in which he funneled Smoby

18   assets to entities under his personal ownership and/or control.  Smoby then submitted falsified

19   invoices which concealed the losses by inflating revenues.  Subsidiaries misreported large amounts

20   of intercompany sales as "final" sales, thereby artificially increasing company turnover and

21   EBITDA.  In fact, the intercompany transfers were often made at cost or at a loss.  Smoby's

22   financial statements failed to reflect millions in outstanding receivables from subsidiaries to the

23   mother company.

24       37.   The Original Lenders were made privy to Smoby's inner operations.  For example,

25   SG held an approximate 10.3% equity stake in Smoby and 6.6% of its voting rights through its

26   subsidiary SG Asset Management.  In addition, SG obtained additional rights under the syndicated

27   loan agreement.  The new credit agreement contained numerous provisions giving it unfettered

28   control over Smoby's future operations, and Smoby was required to submit all annual consolidated

10012.003 - 234273.1

accounts and any other information relative to its financial situation on demand.  Smoby also was required to organize an annual information meeting with the Banks to present its business plan and financial situation to the Banks.

### The Banks Have Knowledge of the Fraud at Smoby

38.     Now that SG and the other Original Lender, Calyon, were involved in Smoby operations – including their participation in annual financial presentations and projections mandated by the loan documents, their knowledge of Mr. Breuil's rapid depletion of a 250M Euro credit, and their intensive examination of Smoby's books in 2006 (detailed below) – SG and Calyon became aware of Mr. Breuil's frauds.

39.     In addition, the ballooning debt to equity ratios would have been a red flag to any arms-length bank.  In 2005 – at the time of the issuance of the syndicated loan – the ratio of Smoby's debt to equity exceeded 2.1.  By industry standards, a company's debt is considered saturated when its total liabilities to equity ratio is over 2.0.  By 2006, the ratio had climbed to more than twice that, over 4.4.

### The Banks Develop a Plan to Conceal The
### Fraud And Shift The Banks' Bad Debt onto an Unsuspecting Investor

40.     Mr. Breuil's shell game could not go on forever.  It became clear in mid-2006 that Smoby would exhaust the entire syndicated loan credit.  At this stage, the Original Lenders demanded Smoby restructure its debt and seek out a new investor.

41.     As noted above, instead of alerting the authorities – which would likely lead to the immediate shut down of Smoby and a total loss on their credit – the Original Lenders developed a plan to conceal Smoby's worthless state.  They directed Mr. Breuil to seek out a solvent, unsuspecting investor on whom they could pin Smoby's debt.

42.     At the same time, even though Smoby's debt to equity ratios were now over 4 to 1, in late 2006 the Original Lenders granted Smoby one final bridge loan (the "Bridge Loan") to conceal the company's insolvency, and granted Smoby waivers from financial covenants even as its liability

7
COMPLAINT

1 to equity ratios grew dangerously high. Instead of a legitimate enterprise, Smoby became a shell for

2 the Original Lenders to play for time and conceal what they now knew were bad debts.

3      43.    The Bridge Loan, issued on October 30, 2006 in the amount of 27M EUR, was due

4 on March 31, 2007, and had an initial interest rate of 5%. It provided that the interest rate would

5 increase if Mr. Breuil did not find an equity investor by December 1, 2006. Smoby's 2006 Annual

6 Report also stated that Smoby was under a mandate to find a financial partner after signing the

7 bridging loan. The press also began to report that an investor in Smoby was solicited and

8 forthcoming.

9      44.    At the same time, the Original Lenders quietly began to unload large amounts of

10 Smoby's debt to the Assignees. On information and belief, the Assignees acquired the debt at a third

11 of face value or less. A controlling portion of the debt was acquired by the investment arm of

12 Deutsche Bank.

13      45.    The Banks used EOS and Redwood Capital as agents to negotiate with MGA, and

14 gave EOS and Redwood Capital authority to act their behalf. MGA met and negotiated with EOS in

15 the United States, and engaged in extensive email negotiations with both Redwood Capital and EOS

16 from its California email addresses.

17      46.    As of mid-March, Mr. Breuil had not yet found a suitable equity investor. With the

18 maturity date of the Bridge Loan just weeks away, on or around March 19, 2007, Smoby applied for

19 a "safeguarding procedure" in the French Commercial Court of Lons Le Saunier, a form of pre-

20 bankruptcy debtor protection under French law.

21      47.    The Defendants and the Banks thus set the stage for a win-win outcome for the

22 Banks. Either the Assignees would gain equity control for the banking consortium on the cheap,

23 liquidate the company, and re-sell it for a profit, or they would pin the entire debt on an unsuspecting

24 investor. MGA became the target in the latter effort.

25

26             **Pursuant to the Banks' Direction, Breuil Contacts**

27            **MGA in California and Solicits It to Purchase Smoby**

28      48.    At the Banks' direction, on or around March 22, 2007, Mr. Breuil phoned MGA

1   president Isaac Larian at MGA headquarters in Van Nuys, California. During the conversation, Mr.

2   Breuil informed Mr. Larian of Smoby's problems and asked if MGA was interested in acquiring

3   Smoby. Mr. Breuil downplayed Smoby's problems, and attributed its recent entrance into pre-

4   bankruptcy proceedings to temporary cash flow problems. Expanding on the misrepresentations he

5   had made publicly regarding Smoby's financial state, Mr. Breuil portrayed Smoby as a company

6   with high turnover and a commanding position in the European toy market. He suggested an

7   acquisition of Smoby by MGA would both provide him with a "soft landing" and enhance MGA's

8   growth potential abroad. Mr. Breuil did not mention Smoby's true financial state, only the existence

9   of excessive debt.

10       49.     Mr. Larian, knowing of Smoby's dominant position in the European toy market, was

11  interested. Mr. Larian reasonably believed Smoby to be a lawful enterprise: The Breuils were a well

12  known family; Smoby, a household name in France, is listed on the French Stock Market, which is

13  supervised by the AMF (the French financial regulatory agency).

14

15      **MGA Negotiates With the Defendants and the Banks in the United States, and Is Told the**

16                          **Banks Will Substantially Discount the Debt**

17      50.     Mr. Larian inquired into who was holding Smoby's debt, and was advised that

18  Deutsche Bank held a majority of the debt together with its co-investors. He then contacted

19  Defendant Deutsche Bank to negotiate a deal regarding that debt. From the outset, Mr. Larian made

20  it clear to the Banks and their representatives that he would not purchase Smoby without a reduction

21  in the debt owed to the Banks. On or around March 29, 2007, Deutsche Bank Director Stephane

22  Perche referred Mr. Larian to Didric Cederholm of Defendant EOS for further negotiations.

23      51.     On March 30, 2007, Mr. Larian met with Mr. Cederholm, who acted as the Banks'

24  representative in EOS' New York offices, to discuss a potential acquisition. Mr. Larian informed

25  Mr. Cederholm that he would need to be provided information and due diligence materials before

26  entering into any agreement regarding Smoby. On behalf of the Banks, Mr. Cederholm informed

27  him that the Banks were "optimistic" about working with MGA and would engage him in the flow

28  of information. Mr. Cederholm further represented that the Banks would discount the Smoby debt,

                                         9

10012.003 - 234273.1

1  and suggested they would go below 50% of the full amount claimed.

2       52.    Over the course of the next week, Mr. Larian exchanged several emails and phone

3  calls from his California offices with Mr. Breuil and other Smoby representatives regarding the

4  acquisition deal.  With the Banks' knowledge and consent, Mr. Breuil and other Smoby

5  representatives sent a substantial amount of financial and operational information about Smoby to

6  Mr. Larian's California email address.

7       53.    On the basis of the Banks' and Defendants' representations that they would discount

8  the debt, and the financial information provided, among other things, Mr. Larian believed that

9  Smoby would be a good acquisition for MGA.  Although Smoby clearly had financial problems and

10  excessive debt, Smoby appeared to have strong sales, an extensive distribution network, and a

11  valuable brand.  With proper techniques and a discount on the debt, turning Smoby around appeared

12  likely.  Acquiring Smoby would allow MGA the opportunity to expand into French and Italian

13  markets, in which MGA did not have a strong presence.  At the same time, MGA could help Smoby

14  promote its brands in the United States and Canada.  The two companies combined would have

15  better bargaining power with suppliers and licensors; better leverage in negotiating with retailers;

16  could share tooling for similar products; and could share infrastructure in Hong Kong.

17       54.    On information and belief, EOS and Redwood learned that the Banks intention was

18  not to engage in good faith negotiations, but instead to get MGA on the hook for Smoby's bad debts.

19  Despite EOS and Redwood Capital gaining this information, they withheld this information from

20  MGA to entice MGA to proceed with the Smoby deal.

21

22               **MGA Makes An Offer To Purchase Smoby Securities**

23                          **From Its California Offices**

24       55.    In reliance on the misrepresentations made to MGA regarding Smoby, MGA

25  submitted a bid for the acquisition of the company.  On or around April 4, 2007, Mr. Larian sent a

26  letter from MGA's California office to Mr. Breuil proposing an option to purchase Smoby shares.

27  MGA proposed to acquire the Breuil family's majority interest in Smoby in exchange for a nominal

28  one Euro sum, a 30 million Euro equity investment, and a 50 million Euro investment through a

credit facility.  A safeguard plan would be submitted calling for repayment of the 26.7 million Euro Bridge Loan at the end of a 4-year period, and for acquisition of the 250 million Euro Syndicated Loan at 35% (87.5 million Euros total).  The letter further proposed an exclusive five week due diligence period to conduct legal and financial review.  The offer was contingent upon, among other things, an agreement with the Banks regarding reduced debt and submission of a safeguard plan.

56.     As noted above, the Defendants and the Banks had set the stage for a win-win outcome for the Banks.  Having acquired the majority of the Smoby debt for cents on the dollar, the Defendants and Assignees either could gain equity control for the banking consortium on the cheap, liquidate the company, and re-sell it for a profit, or they could shift the entire debt onto an unsuspecting investor.  They pursued both plans simultaneously.

57.     In order to convert the debt to equity, with the apparent goal of liquidating the company and selling it for a higher price, Deutsche Bank submitted an offer on or around March 27, 2007 proposing such a debt to equity plan.  The rest of the Banks supported this offer.  The Assignees, however, were attacked in the French press as predators who intended to strip the company and shut it down.

58.     In contrast, MGA's intention was to save and grow the company, and its bid was supported by many as providing an "industrial" solution.  In the end, the DB's takeover bid was unsuccessful.  Mr. Breuil and Smoby's employee unions supported MGA's offer, and Smoby's employees voted in favor of an MGA acquisition.  The Commercial Court approved MGA's offer.

59.     On April 6, 2007, Mr. Breuil sent return correspondence to MGA's California office, in English, accepting MGA's offer to enter into exclusive negotiations with MGA regarding acquisition of the company.

#### The Defendants and Banks Continue to Conceal the Banks' Fraudulent Intent
#### During the Due Diligence Period So MGA Will Proceed with the Deal

60.     Thwarted in their attempt to gain equity control of Smoby, the Defendants and the Banks focused on their alternative plan of luring in a solvent, unsuspecting investor.  MGA presented a perfect target for the Banks to shift their huge exposure on the Smoby credit from an

1    insolvent fraudster to a well-known American company.

2       61.    As MGA proceeded through due diligence, the Defendants and the Banks carefully

3    concealed their intent to "get" MGA to repay the entire debt of nearly 300M EUR rather than agree

4    to any workable debt solution. The Defendants never shared the information about the Banks' true

5    intentions with Mr. Larian and MGA, or that Smoby was not salvageable. The Defendants and the

6    Banks intended to withhold this to lure MGA into making the Banks' bad debt good.

7       62.    The Defendants and the Banks encouraged MGA to close the deal, assuring MGA

8    that no formal safeguarding procedure would be necessary and that they would accept a substantial

9    discount on their loans. On or around April 17, 2007, Defendants and the Banks' representatives

10   encouraged MGA after a court hearing to make a "reasonable" proposal and indicated that it would

11   cooperate in releasing receivables.

12      63.    Had MGA known the information concealed by the Defendants and the Banks, it

13   would not have entered the deal it did.

14

15   **After Acquisition, The Banks Refuse to Honor Their Agreement to Discount the Debt**

16   **.Even After Disclosure of the Frauds and MGA's Attempts to Revive the Company**

17      64.    Unaware of the fraud that had been committed on it, MGA proceeded in good faith to

18   perform its side of the deal.

19      65.    MGA pumped millions into Smoby, based on the representations made to it by the

20   Defendants, the Banks and Smoby representatives prior to the acquisition.

21      66.    After the acquisition, Mr. Larian began to receive reports from his California offices

22   regarding Smoby's operations. As the results came in, MGA was shocked to discover the true losses

23   at Smoby, which were staggeringly larger than represented in the financial statements. MGA began

24   to realize that the true financial situation at Smoby was dire and differed from the materials the

25   Banks' agents provided to it pre-acquisition. It became clear that the sales of Smoby's international

26   subsidiaries had been materially misrepresented to MGA. MGA learned about other defalcations as

27   well.

28      67.    Smoby was in dire financial circumstances as a result of the prior debt and fraudulent

12

COMPLAINT

1   activities. Mr. Larian promptly contacted Bank representatives and implored them to honor their

2   agreement to sell the debt at a reduced rate, in a last-ditch effort to save the company.

3        68.    Mr. Larian and MGA representative Didier Pietri also entered into extensive

4   negotiations with Mr. Cederholm of EOS and Ruben Kliksberg of Redwood Capital, who spoke on

5   behalf of the Banks, for potential restructuring solutions to the crisis.

6        69.    All of the Banks, except one, disavowed their promise to discount the debt. Their

7   September 27, 2007 letter, written in English, was sent to MGA's Van Nuys, California office and

8   was signed by Barclays Bank, Calyon, Commerzbank, Deutsche Bank and Societe Generale.

9        70.    In contrast to the rest of the Banks, in or around September 11, 2007, one member of

10  the banking syndicate, La Caisse Regionale de Credit Agricole de Franche Comte, sent a an email to

11  Smoby accepting purchase of the Line of Credit at approximately 30%.

12       71.    In the face of Smoby's losses – and the Banks' refusal to abide by their

13  representations that they would discount the debt – the French Commercial Court ordered Smoby

14  into bankruptcy ("redressement judicaire") in October, 2007.

15       72.    The above acts resulted in a total loss of MGA's more than 50M EUR investment in

16  Smoby.

17       73.    Despite the fact that MGA never borrowed any money from the Banks, and instead

18  pumped tens of millions into a defunct company that it held for less than a year, the Banks instituted

19  an action against MGA in or around July 2008 to collect the entire 250M+ EUR debt Mr. Breuil and

20  Smoby created prior to MGA's ownership of the company. MGA never undertook to repay 100% of

21  the Banks' loans to Smoby, but the Banks' claim that it did is contradicted by Mr. Larian's April 4,

22  2007 offer letter and his May 7, 2007 email exercising the call option – both of which provided for a

23  purchase of the debt at a reduced rate. The Banks' attempt to force MGA to pay 100% of the bad

24  debt of Smoby, after they lured MGA to invest over 50M EUR into the company, is tantamount to

25  bad faith.

26       74.    As a result of the wrongdoing by the Defendants, MGA has lost over approximately

27  $70M USD (53.2M EUR) in investments in Smoby.

28

---

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Fraud – Nondisclosure)

### By MGA against the Defendants

75.    Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs, inclusive, as though fully set forth herein.

76.    . Communications were made by the Defendants in connection with MGA's acquisition of and investments in Smoby, including but not limited to:

    a.   Statements made by Didric Cederholm of Defendant EOS to Isaac Larian in a March 30, 2007 meeting in EOS' New York Office.  Mr. Cederholm stated that the Banks were optimistic about working with MGA and would engage MGA in the flow of information regarding the acquisition of Smoby;

    b.   Statements made by Didric Cederholm of Defendant EOS to Isaac Larian in a March 30, 2007 meeting in EOS' New York Office.  Mr. Cederholm represented that the Banks would discount the Smoby debt, and suggested they would go below 50% of the full amount claimed; and

    c.   The Defendants' and the Banks' ongoing statements to MGA until Smoby was liquidated that the Banks would accept a significant discount outside of the safeguarding proceeding.

77.    The Defendants knew these representations were false at the time they were made, or acted with reckless disregard of the truth of the representations, and knew or should have known the truth that the Banks secretly intended to "get" MGA by misrepresenting their willingness to discount the Smoby debt in order to lure MGA into buying Smoby and assuming 100% of the debt.  The Defendants' knowledge of falsity is evidenced by the following, among other things:

    a.   Mr. Cederholm's conversation with SG wherein SG disclosed that the Banks' never intended to negotiate with MGA but were out to "get" MGA by seeking to hold them liable for the entire debt;

    b.   Defendants partnership with the Banks and acquiring an interest in the Smoby debt;

1    and

2        c.  Defendants' serving as the Banks' agents for the purposes of negotiations with MGA.

3        78.    The Defendants had superior knowledge of the material facts of the Banks' secret

4    intent to "get" MGA by misrepresenting their willingness to discount the Smoby debt in order to lure

5    MGA into buying Smoby.  The Defendants' superior knowledge is evidenced by the following,

6    among other things:

7            a.  Mr. Cederholm's conversation with SG wherein SG disclosed that the Banks' never

8                intended to negotiate with MGA, and intended instead to go after MGA for the full

9                amount of the debt; and

10           b.  On information and belief, Redwood Capital learned of this from EOS or the Banks at

11               or around the same time EOS learned it.

12       79.    By virtue of the Defendants' and the Banks' superior knowledge of material facts

13   which they knew were neither known by nor readily accessible to MGA, they owed plaintiff a duty

14   to disclose the true facts, including that the Banks never intended to discount the Smoby debt, but

15   instead intended to seek to recover the entire debt from MGA, and that the Banks misrepresented

16   their willingness to negotiate in order to entice MGA to buy Smoby.

17       80.    The Defendants and the Banks breached their duty to disclose with the intent to

18   defraud and deceive MGA, and with the intent to induce it to act in a manner herein alleged.  The

19   Defendants' and the Banks' failure to disclose is established by, among other things:

20           a.  Defendants EOS and Redwood Capital – who were acting on behalf of the Banks –

21               failed to disclose the Banks' planned fraud to Mr. Larian during his negotiations in

22               person and from MGA's Van Nuys offices;

23           b.  Didric Cederholm of Defendant EOS did not reveal to Isaac Larian the true facts of

24               Smoby's financial state or the Banks' intentions to defraud MGA in a March 30, 2007

25               meeting in EOS' New York Office.  Instead Mr. Cederholm stated that the Banks

26               were optimistic about working with MGA and would engage MGA in the flow of

27               information regarding the acquisition of Smoby, and that the Banks would discount

28               the Smoby debt and suggested they would go below 50% of the full amount claimed;

15
COMPLAINT

10012.003 - 234273.1

and

c. The Defendants failed to disclose this information at any time prior to 2014 despite continued negotiations with MGA up to Smoby's liquidation.

81.     MGA, at the time it took the actions herein alleged, was ignorant of the facts Defendants failed to disclose, and of their secret intent not to fully and truthfully disclose all facts regarding the Smoby transaction.

82.     In reasonable reliance on Defendants' representations, MGA, among other things, submitted an offer to purchase Smoby, expended substantial time and resources in efforts to salvage Smoby, and injected millions into Smoby to enable it to continue operating while MGA continued to negotiate with the Banks. Had MGA known that the Banks never intended to discount the Smoby debt, MGA would not have undertaken these actions.

83.     MGA's reliance was justified because of its belief that Defendants were dealing with it fairly, honestly, and in good faith; because of Defendants' reputation as allegedly honest and reputable companies working with honest and reputable banks.

84.     As a proximate result of Defendants' fraud and deceit, plaintiff has been damaged.

85.     Plaintiff is entitled to special damages, including loss of investments, prior legal fees, CPA fees, miscellaneous deal fees, payments to Mr. Breuil, and other consequential damages, in excess of $80M USD.

86.     Plaintiff is entitled to general damages in excess of $350M USD according to proof.

87.     As alleged above, these Defendants are guilty of oppression, fraud, and/or malice as defined in *Civil Code* section 3294, and MGA should recover, in addition to actual damages, exemplary and punitive damages to make an example of and to punish Defendants, in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Fraud – Concealment)

### By MGA against the Defendants

88.     Plaintiff realleges and incorporates by reference all of the allegations contained in the

10012.003 - 234273.1

1    preceding paragraphs, inclusive, as though fully set forth herein.

2        89.    Communications of material fact were made by the Defendants in connection with

3    MGA's acquisition of and investments in Smoby, including but not limited to:

4            a.  Statements made by Didric Cederholm of Defendant EOS to Isaac Larian in a March

5                30, 2007 meeting in EOS' New York Office.  Mr. Cederholm stated that the Banks

6                were optimistic about working with MGA and would engage MGA in the flow of

7                information regarding the acquisition of Smoby;

8            b.  Statements made by Didric Cederholm of Defendant EOS to Isaac Larian in a March

9                30, 2007 meeting in EOS' New York Office.  Mr. Cederholm represented that the

10               Banks would discount the Smoby debt, and suggested they would go below 50% of

11               the full amount claimed; and

12           c.  The Defendants' and the Banks' ongoing statements to MGA until Smoby was

13               liquidated that the Banks would accept a significant discount outside of the

14               safeguarding proceeding.

15       90.  The above communications were false because, among other things:

16           a.  the Defendants and the Banks intended to conceal material information about

17               Smoby;

18           b.  In fact, the Defendants and the Banks did not intend to abide by these

19               representations; and

20           c.  The Defendants had no intention of accepting a discount at any time.

21       91.    On information and belief, the Defendants learned the Banks' true intentions after the

22   initial representations were made to MGA and before MGA relied on this information and sustained

23   the losses described herein.  Once the Defendants knew their representations to MGA were false,

24   they never disclosed the true facts regarding the Smoby transaction until 2014, years after MGA

25   suffered these damages.  The Defendants intentionally concealed the true material information.  If

26   this information had been revealed, MGA would not have suffered the losses it did.

27       92.    The Defendants intended to induce MGA to rely on these misrepresentations and to

28   proceed with the acquisition of Smoby.  As set forth above, the Banks knew the Smoby debt would

17

COMPLAINT

1    never be repaid unless a solvent investor, in this case MGA, purchased Smoby. The Defendants and

2    Banks that held this debt knew they would lose multiple millions on the investments in this debt

3    unless MGA acquired Smoby. They therefore concocted the scheme set forth herein to induce MGA

4    to purchase Smoby.

5         93.     MGA, at the time it took the actions herein alleged, was ignorant of the facts

6    Defendants failed to disclose, and of the Defendants' secret intent not to fully and truthfully disclose

7    all facts known to them regarding the Smoby transaction.

8         94.     In reasonable reliance on Defendants' representations, MGA, among other things,

9    submitted an offer to purchase Smoby, expended substantial time and resources in efforts to salvage

10   Smoby, and injected millions into Smoby to enable it to continue operating while MGA continued to

11   negotiate with the Banks. Had MGA known that the Banks never intended to discount the Smoby

12   debt, MGA would not have undertaken these actions.

13        95.     MGA's reliance was justified because of its belief that Defendants were dealing with

14   it fairly, honestly, and in good faith; because of Defendants' reputation as allegedly honest and

15   reputable companies working with honest and reputable banks.

16        96.     As a proximate result of Defendants' fraud and deceit, plaintiff has been damaged.

17        97.     Plaintiff is entitled to special damages, including loss of investments, prior legal fees,

18   CPA fees, and, miscellaneous deal fees, payments to Mr. Breuil, and other consequential damages,

19   in excess of $80M.

20        98.     Plaintiff is entitled to general damages in excess of $350M USD according to proof.

21        99.     As alleged above, these Defendants are guilty of oppression, fraud, and/or malice as

22   defined in *Civil Code* section 3294, and MGA should recover, in addition to actual damages,

23   exemplary and punitive damages to make an example of and to punish Defendants, in an amount

24   according to proof.

25   ///

26   ///

27   ///

28   ///

10012.003 - 234273.1

## THIRD CAUSE OF ACTION

### (Fraud – Aiding and Abetting)

### By MGA Against the Defendants

100.   Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs, inclusive, as though fully set forth herein.

101.   In connection with MGA's acquisition of Smoby, the Banks made multiple representations that they would discount Smoby's debt and negotiate with MGA to pay a portion of the face value of that debt in connection with its acquisition of Smoby. The Banks' representations include, among others:

    a.   Expressing their desire for MGA to purchase the current credit facilities before the closing of the safeguard procedure, thus enticing MGA to waive this condition of the Smoby acquisition transaction; and

    b.   Continually indicating to MGA that they wanted to settle the Smoby debt with MGA at a discount up until Smoby was put into bankruptcy.

102.   The Banks' representations were in fact false. The true fact was that the Banks intended to "get" MGA by inducing it to acquire Smoby and then seeking to collect the entire face value of Smoby's debts from MGA in a French legal proceeding.

103.   The Defendants materially assisted the Banks misrepresentations to MGA by, among other things:

    a.   Didric Cederholm of Defendant EOS met with Isaac Larian in March 30, 2007, and stated that the Banks were optimistic about working with MGA and would engage MGA in the flow of information regarding the acquisition of Smoby;

    b.   Didric Cederholm also represented that the Banks would discount the Smoby debt, and suggested they would go below 50% of the full amount claimed; and

    c.   After MGA acquired Smoby, EOS and Redwood continued to negotiate with MGA and lead MGA to believe a deal would be reached regarding Smoby's debt.

104.   The Defendants and the Banks learned of the Banks' true intentions as set forth above and became aware the representations made to MGA were false.

COMPLAINT

10012.003 - 234273.1

105.    MGA, at the time it took the actions herein alleged, was ignorant of the true facts regarding Smoby.  In reasonable reliance on Defendants' representations, MGA, among other things, submitted an offer to purchase Smoby, expended substantial time and resources in efforts to salvage Smoby, and injected millions into Smoby to enable it to continue operating while MGA continued to negotiate with the Banks.  Had MGA known that the Banks never intended to discount the Smoby debt, MGA would not have undertaken these actions.

106.    MGA's reliance was justified because of its belief that Defendants were dealing with it fairly, honestly, and in good faith; because of its lack of knowledge of French culture, court system, or language; because of Defendants' reputation as allegedly honest and reputable companies working with honest and reputable banks.

107.    Defendants' fraud has caused substantial damages to plaintiff.

108.    Plaintiff is entitled to special damages, including loss of investments, prior legal fees, CPA fees, miscellaneous deal fees, payments to Mr. Breuil, and consequential damages in excess of $80M USD.

109.    Plaintiff is entitled to general damages in excess of $350M USD according to proof.

110.    As alleged above, these Defendants are guilty of oppression, fraud, and/or malice as defined in *Civil Code* section 3294, and MGA should recover, in addition to actual damages, exemplary and punitive damages to make an example of and to punish Defendants, in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation by Omission)

### By MGA Against the Defendants

111.    Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs, inclusive, as though fully set forth herein.

112.    Misrepresentations of material fact were made by the Defendants in connection with MGA's acquisition of and investments in Smoby, including but not limited to:

a.    Statements made by Didric Cederholm of Defendant EOS to Isaac Larian in a March

20

COMPLAINT

30, 2007 meeting in EOS' New York Office. Mr. Cederholm stated that the Banks were optimistic about working with MGA and would engage MGA in the flow of information regarding the acquisition of Smoby. In fact, the Defendants and the Banks intended to conceal material information about Smoby;

   b.  Statements made by Didric Cederholm of Defendant EOS to Isaac Larian in a March 30, 2007 meeting in EOS' New York Office. Mr. Cederholm represented that the Banks would discount the Smoby debt, and suggested they would go below 50% of the full amount claimed. In fact, the Defendants and the Banks did not intend to abide by these representations; and

   c.  The Defendants' and the Banks' ongoing statements to MGA until Smoby was liquidated that the Banks would accept a significant discount outside of the safeguarding proceeding were not true.

113.    The Defendants had no reasonable ground for believing these representations to be true at the time they were made, and made them in a manner not warranted by the available information. This is supported by the following, among other things:

   a.  The true intent of the Banks was available, and was disclosed to, Mr. Cederholm when he asked SG and was told that the Banks' never intended to negotiate with MGA but were out to "get" MGA to pay the entire debt;

   b.  EOS and Redwood Capital holding a portion of the Smoby debt with DB, and thus having a direct line of communication with DB regarding the Banks' intentions;

   c.  Defendants partnership with the Banks and acquiring an interest in the Smoby debt; and

   d.  Defendants' serving as the Banks' agents for the purposes of negotiations with MGA.

114.    The Defendants intended to induce MGA to rely on these misrepresentations and to proceed with the acquisition of Smoby.

115.    MGA, at the time it took the actions herein alleged, was ignorant of the facts Defendants failed to disclose.

116.    Defendants never disclosed the true facts regarding the Smoby transaction, despite

10012.003 - 234273.1

1 learning them and knowing their representations to MGA were therefore false.

2     117.    In reasonable reliance on Defendants' representations, MGA, among other things,

3 submitted an offer to purchase Smoby, expended substantial time and resources in efforts to salvage

4 Smoby, and injected millions into Smoby to enable it to continue operating while MGA continued to

5 negotiate with the Banks.  Had MGA known that the Banks never intended to discount the Smoby

6 debt, MGA would not have undertaken these actions.

7     118.    MGA's reliance was justified because of its belief that Defendants were dealing with

8 it fairly, honestly, and in good faith; because of Defendants' reputation as allegedly honest and

9 reputable companies working with honest and reputable banks.

10     119.    As a proximate result of Defendants' conduct, plaintiff has been damaged.

11     120.    Plaintiff is entitled to special damages, including loss of investments, prior legal fees,

12 CPA fees, miscellaneous deal fees, payments to Mr. Breuil, and other consequential damages, in

13 excess of $80M USD.

14     121.    Plaintiff is entitled to general damages in excess of $350M USD according to proof.

15     122.    As alleged above, these Defendants are guilty of oppression, fraud, and/or malice as

16 defined in *Civil Code* section 3294, and MGA should recover, in addition to actual damages,

17 exemplary and punitive damages to make an example of and to punish Defendants, in an amount

18 according to proof.

19

20                    **PRAYER**

21     WHEREFORE, plaintiff prays judgment against Defendants, and each of them, as follows:

22 Causes of Action One, Two, Three, and Four

23     1.    For special damages, including loss of investments, prior legal fees, CPA fees,

24 miscellaneous deal fees, payments to Mr. Breuil, and other consequential damages in excess of

25 $80,000,000.00.

26     2.    For general damages in excess of $350,000,000 according to proof.

27     3.    For punitive damages according to proof at trial.

28

10012.003 - 234273.1

1    <u>On All Causes of Action</u>

2         1.    For interest at the legal rate;

3         2.    For attorney fees on all applicable claims;

4         3.    For costs of suit incurred herein; and,

5         4.    For such other further relief as the Court deems just and proper.

6

7    DATED: May 23, 2014                    CAPPELLO & NOËL LLP

8

9                                          By:

10                                            A. Barry Cappello
                                              Leila J. Noël
11                                            Wendy D. Welkom
                                              Attorneys for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10012.003 - 234273.1

1

## DEMAND FOR JURY TRIAL

2

3    Plaintiff demands a trial by jury of all issues so triable in this action.

4

5  DATED:  May 23, 2014            CAPPELLO & NOËL LLP

6

7                  By:

8                    A. Barry Cappello
                        Leila J. Noël

9                    Wendy D. Welkom
                    Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

COMPLAINT

10012.003 - 234273.1

# CERTIFICATE OF SERVICE

## United States District Court for the Central District of California

Case No. _____

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Winston & Strawn LLP, 333 S. Grand Avenue, Los Angeles, CA 90071-1543. On August 19, 2014, I served the following document:

## DEFENDANT EOS PARTNERS, L.P.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 14419(A)

☒     by placing a copy of the document listed above in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, CA addressed as set forth below.

I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

**A. Barry Cappello**
**Leila J. Noel**
**Wendy D. Welkom**
**CAPPELLO & NOEL, LLP**
**831 State Street**
**Santa Barbara, CA 93101**
**Tel: 805-564-2444**
**Fax: 805-965-5950**
**ATTORNEYS FOR PLAINTIFF, MGA ENTERTAINMENT, INC.**

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Signed: _____
Ann Newman

Dated:  August 19, 2014

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| MGA ENTERTAINMENT, INC. | EOS PARTNERS, LP, REDWOOD CAPITAL GROUP, LLC, DOES 1 through 50 |

| **(b) County of Residence of First Listed Plaintiff**  Los Angeles, CA<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   New York, NY<br>*(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|

| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br><br>CAPPELLO & NOEL<br>831 State Street, Santa Barbara, CA 93101<br>(805) 564-2444 | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br><br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor, Los Angeles, CA 90071<br>(213) 615-1700 |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☐ 1. Original Proceeding
- ☒ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes  ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $ $430,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1332, diversity jurisdiction. Plaintiff alleges that Defendants engaged in fraud and negligent misrepresentation.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | **CV14-6532** |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? ☒ Yes ☐ No — If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

**QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?** ☐ Yes ☒ No — If "no," skip to Question C. If "yes," answer Question B.1, at right.

B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.   ☐ NO. Continue to Question B.2.

B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.   ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there.

**QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?** ☐ Yes ☒ No — If "no," skip to Question D. If "yes," answer Question C.1, at right.

C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.   ☐ NO. Continue to Question C.2.

C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.   ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there.

| QUESTION D:  Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A? ☐ Yes ☒ No — If "yes," your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question E, below, and continue from there. If "no," go to question D2 to the right. → | D.2. Is there at least one answer in Column B? ☐ Yes ☒ No — If "yes," your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question E, below. If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ↓ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN |

**QUESTION F: Northern Counties?**

Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? ☐ Yes ☒ No

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?   ☐ NO   ☒ YES

If yes, list case number(s):   11-CV-04932

Civil cases are related when they:

☒ A. Arise from the same or closely related transactions, happening, or event;

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**                          DATE: 8/19/14

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

1

# CERTIFICATE OF SERVICE

2

## United States District Court for the Central District of California

3

Case No. _____

4

I am a resident of the State of California, over the age of eighteen years, and not a

5

party to the within action. My business address is Winston & Strawn LLP, 333 S. Grand

6

Avenue, Los Angeles, CA 90071-1543. On August 19, 2014, I served the following

7

document:

8

## CIVIL COVER SHEET

9

☒   by placing a copy of the document listed above in a sealed envelope with
postage thereon fully prepaid in the United States mail at Los Angeles, CA
addressed as set forth below.

10

11

I am readily familiar with the firm's business practice for collection and
processing of correspondence for mailing with the United States Postal Service.
On the same day that correspondence is placed for collection and mailing, it is
deposited in the ordinary course of business with the United States Postal
Service with postage fully prepaid.

12

13

14

**A. Barry Cappello**
**Leila J. Noel**

15

**Wendy D. Welkom**
**CAPPELLO & NOEL, LLP**

16

**831 State Street**
**Santa Barbara, CA 93101**

17

**Tel: 805-564-2444**
**Fax: 805-965-5950**

18

**ATTORNEYS FOR PLAINTIFF, MGA ENTERTAINMENT, INC.**

19

I declare under penalty of perjury under the laws of the United States of America that

20

the above is true and correct.

21

Signed: _____

22

Ann Newman

23

Dated:   August 19, 2014

24

25

26

27

28

1